**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**


JEREMIAH HALE,                      :

    Petitioner,                    :

vs.                                 : CIVIL ACTION NO. 09-0494-WS-C

UNITED STATES OF                    : CRIMINAL ACTION NO. 07-0385-WS
AMERICA,
                                    :
    Respondent.


## REPORT AND RECOMMENDATION

Petitioner, Jeremiah Hale, a federal prison inmate, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 70; *see also* Doc. 71). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, as well as the testimony given at the April 13, 2010 evidentiary hearing, it is recommended that Hale's § 2255 motion be denied and that it be found he is not entitled to a certificate of appealability.

## FINDINGS OF FACT

1.    Hale was arrested by DEA agents on October 25, 2007. (*Compare* Docket Sheet Entry for October 25, 2007 *with* Doc. 1, Attached Affidavit, at 3) One day later, on

October 26, 2007, Hale was charged, by criminal complaint, with attempting to possess with intent to distribute powder cocaine on October 25, 2007, in violation of 21 U.S.C. § 841(a)(1). (Doc. 1) On November 27, 2007, a three-count indictment charged Hale with conspiracy to attempt to possess with intent to distribute more than 5 kilograms of cocaine, from August of 2004 through October 25, 2007, in violation of 21 U.S.C. § 846, and attempting to possess with intent to distribute approximately 30 kilograms of cocaine on October 25, 2007, in violation of 21 U.S.C. § 841(a)(1). (Doc. 12)[1]

2.      On January 24, 2008, the parties filed a plea agreement and factual resume with the Court. (Doc. 37)[2] The plea agreement reads, in relevant part, as follows:

_____

[1]      A forfeiture count was also asserted against Hale. (*Id.,* Count Three)

[2]      That same date, the government filed enhancement information. (*See* Doc. 35 ("[P]ursuant to 21 U.S.C. § 851(a), [the United States] files this information setting forth facts concerning previous convictions of this defendant for felony drug offenses, which expose defendant **JEREMIAH HALE** to increased punishment if convicted of Counts One and Two in the indictment herein: 1.  On or about January 13, 1998, defendant **JEREMIAH HALE** was convicted of felony unlawful possession of a controlled substance (cocaine) in the Circuit Court of Mobile County, Alabama, Case Number CC-97-3322.  2.  The conviction is 'final' within the meaning of 21 U.S.C. §§ 841(b) and 962(b).")) It is clear, however, that January 24, 2008 was not the first date upon which Hale became aware that he was facing a mandatory minimum sentence of 20 years to life imprisonment due to his prior drug conviction. Rather, at the continuation of his preliminary examination and detention hearing on November 1, 2007, a proceeding which Hale attended, petitioner's attorney not only mentioned in open court that his client had a 10-year-old felony conviction but, as well, Assistant United States Attorney Sean Costello specifically stated that Hale's previous drug felony exposed him under § 851 to a mandatory minimum statutory sentence of 20 years to life imprisonment. (*See* Docket Sheet Entry for November 1, 2007 (minute entry for proceedings held before the undersigned)) The undersigned's November 14, 2007 order of detention memorialized Hale's criminal history. (Doc. 11, at 2 n.1 ("Hale's criminal history includes a 1998 felony conviction for possession of cocaine.")) Moreover, at the Probation Office Conference on December 18, 2007, which Hale attended (Doc. 25, at 1), the parties discussed the fact that petitioner had one criminal history

2

## PLEA AGREEMENT

The defendant, JEREMIAH HALE, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands his/her rights as follows:

　　　　1.      To be represented by an attorney;

　　　　2.      To plead not guilty;

　　　　3.      To have a trial by an impartial jury;

　　　　4.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in his/her defense;

　　　　5.      To not be compelled to incriminate himself/herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e (sic), listed above, and pleads guilty to Count 1 of the Indictment, charging a violation of Title 21 United States Code, Section 846, Conspiracy to possess with intent to distribute powder cocaine.

.      .      .

4.      The defendant expects the Court to rely upon his/her statements here and his/her response to any questions that he/she may be asked during the guilty plea hearing.

---

point because of a prior offense of possession of a controlled substance (*id*. at 4) and, further, that petitioner was facing a statutory mandatory minimum sentence of 20 years to life imprisonment (*id*. at 6).

5.       The defendant is not under the influence of alcohol, drugs, or narcotics. He/She is certain that he/she is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.       The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He/She has discussed the facts of the case with his/her attorney, and h[is]/her attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him/her. The defendant's attorney has also explained to the defendant his/her understanding of the United States' evidence.

7.       The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his/her counsel have discussed possible defenses to the charge(s). The defendant believes that his/her attorney has represented him/her faithfully, skillfully, and diligently, and he/she is completely satisfied with the legal advice of his/her attorney.

8.       A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9.       This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he/she is pleading guilty because he/she knows that he/she is guilty.

## **PENALTY**

10.       The maximum penalty the Court could impose as to Count 1 of the Indictment is:

1.       Imprisonment for a period of 20 yrs to life;

2.       A fine not to exceed $8,000,000;

3.     A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release;

4.     A mandatory special assessment of $100.00; and

5.     Such restitution as may be ordered by the Court.

## SENTENCING

11.     The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his/her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he/she will not be allowed to withdraw his/her guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

## **RESTITUTION**

16.     The defendant agrees to pay such restitution as may be ordered by the Court relating to the count of conviction as well as such counts as the United States intends to dismiss. The amount of restitution owed, shall be determined by the Court at the time of sentencing.

## **UNITED STATES' OBLIGATIONS**

17.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss Count Two of the Indictment at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

18.     The United States will recommend to the Court that the defendant be sentenced to the low end of the guideline range as determined by the Court.

## **APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35**

19.     If the defendant agrees to cooperate with the United States, he/she agrees to the following terms and conditions:

.     .     .

7.     If the defendant provides **full, complete and truthful cooperation** to the United States, and if his cooperation results in substantial assistance to the United States in the investigation or prosecution of another person who has committed an offense, the United States Attorney's Office for the Southern District of Alabama agrees to move for a downward departure pursuant to U.S.S.G. § 5K1.1 or to file a motion pursuant to Rule 35 of the Fed.R.Crim.P. The defendant acknowledges that the determination of whether or not he has provided substantial assistance will be made solely by the United

States Attorney's Office for the Southern District of Alabama. If a decision is made by the United States to move for a downward departure pursuant to § 5K1.1 or to file a Rule 35 motion, the defendant further acknowledges that the determination regarding the nature and extent of the defendant's assistance rests solely with the United States Attorney's Office for the Southern District of Alabama.

8.      **Defendant acknowledges and fully understands that this plea agreement does not contain a promise by the United States to move for a § 5K1.1 downward departure or to file a Rule 35 motion.**

9.      If the United States moves for a downward departure pursuant to U.S.S.G. § 5K1.1 or files a Rule 35 motion, the United States will recommend to the Court that the Court depart from the low end of the Sentencing Guideline range as determined by the Court. The defendant acknowledges that the United States can only **make a recommendation** for a downward departure to the Court. **The Court has the ultimate authority to determine whether a downward departure should be granted and the amount of any downward departure. The Court also has the ultimate authority to deny a recommendation for a downward departure.**

10.      **The United States makes no representations or promises in this agreement with regard to the exact amount of reduction the United States may recommend to the Court if the United States determines that the defendant has provided substantial assistance.**

.      .      .

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

20.      The defendant acknowledges that he/she is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

21.      With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in

which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255. Any sentence so imposed includes any determination or sentence imposed in a supervised release or probation revocation proceeding.

22.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.     Any punishment imposed in excess of the statutory maximum;

b.     Any punishment that constitutes an upward departure from the guideline range; or

c.     A claim of ineffective assistance of counsel.

23.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id.* at 1-2, 2-4, 4-5, 7-8 & 10 (emphasis in original)) Appearing before Hale's signature line on page 12 of the agreement is this paragraph: "I have consulted with my counsel and fully understand all my rights with respect to the offenses(s) charged in the Indictment pending against me. **I have read this Plea Agreement and carefully reviewed every part of it with my attorney**. **I understand this agreement, and I voluntarily agree to it.** I hereby stipulate that the Factual Resume,[3] incorporated herein, is true and accurate in

---

[3]     The Factual Resume, which Hale also signed, reads as follows:

The defendant, **JEREMIAH HALE**, admits the allegations of Count 1 of the Indictment.

## ELEMENTS OF THE OFFENSE

**HALE** understands that in order to prove a violation of Title 21, United States Code, Section 846, as charged in Count One of the Indictment, the United States must prove:

First:        That two or more individuals in some way or manner came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute cocaine;

Second:        The defendant, knowing the unlawful purpose of the plan, willfully joined in it; and

Third:        That the object of the unlawful plan was to possess with intent to distribute more than 5 kilograms of cocaine, as charged.

## OFFENSE CONDUCT

Defendant, **JEREMIAH HALE**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

From on or about August 2004 and continuing through on or about October 25, 2007, in the Southern District of Alabama, **JEREMIAH HALE** and **SAMUEL EZELL** conspired with each other and with others to possess with intent to distribute more than 5 kilograms of cocaine.

In September 2006, The Mobile Resident Office of the United States Drug Enforcement Administration (DEA) received information from the Laredo, Texas District Office of the DEA that **JEREMIAH HALE** was involved in a drug trafficking organization which involved drug trafficking between Mobile, Alabama and Dallas, Texas.

On September 16, 2006, DEA Special Agents from the Mobile Resident Office and the Laredo District conducted an undercover operation in Mobile,

Alabama during which **HALE** delivered approximately $101,000.00 in U.S. currency to a DEA Special Agent acting in an undercover capacity. DEA Special Agents then delivered the U.S. currency to **HALE's** source of supply for cocaine and methamphetamine in Dallas, Texas. Later investigation revealed the source of supply to be Freddy Paniagua.

On November 11, 2006, **HALE** delivered approximately $150.000.00 in U.S. currency to the same DEA Special Agent acting in an undercover capacity. Again, the money was delivered to Paniagua in Dallas by the undercover DEA Special Agent. The money sent to Paniagua by **HALE** was payment for narcotics supplied by Paniagua to **HALE. SAMUEL EZELL** drove **HALE** to at least one of the two money transfers in his Chevrolet Avalanche.

On March 16, 2007, DEA Special Agents in the Dallas, Texas Division Office initiated an intercept of the telephone utilized by Paniagua in Dallas. During the course of the telephone intercept (March 16, 2007–April 14, 2007), DEA Special Agents intercepted several calls between the target telephone, utilized by **HALE,** and his source of supply for cocaine and methamphetamine, Freddy Paniagua. During the calls, **HALE** and Paniagua used coded language to discuss drug amounts and prices.

On July 16, 2007 DEA Special Agents in Dallas, Texas arrested Paniagua pursuant to a federal arrest warrant issued in the Northern District of Texas. On July 31, 2007 DES (sic) Special Agent Todd Hixson and IRS Special Agent S. Craig Underwood conducted an interview with Paniagua in Dallas. Paniagua provided information regarding the drug trafficking activities of **HALE** and his associates. Paniagua estimated that he began supplying **HALE** with illegal drugs approximately three or four years before. Paniagua and another individual provided cocaine to **HALE** in quantities of between 5 and 20 kilograms at a time. In addition, Paniagua provided methamphetamine to **HALE**. On most occasions, **HALE** paid for the cocaine in advance. The methamphetamine was typically "fronted" to **HALE**. Paniagua estimated that he has sold **HALE** approximately 100 kilograms of cocaine. On most occasions, **HALE** would telephone Paniagua and inform him that he was sending money to purchase cocaine. Paniagua would then receive a telephone call from Darren Perryman who would bring him the money. Paniagua would typically receive the money from Perryman at either his (Paniagua's) residence or Perryman's residence. Paniagua typically charged **HALE** between $15,000.00 and $16,500.00 per kilogram of cocaine.

On August 9, 2007, Paniagua, made a consentually (sic) recorded

telephone call to **HALE**. During the course of the conversation, Paniagua and **HALE** discussed the possibility of future drug transactions including drug amounts and prices. That same day, Paniagua made a consentually (sic) recorded telephone call to Darren Perryman. Perryman discussed the possibility of future drug transactions involving **HALE** and Paniagua. Perryman also told Paniagua that **HALE** currently had another source of supply for drugs.

During early October, 2007, **HALE** and Paniagua had telephone conversations relating to the fact that Perryman had $140,000 of **HALE's** money and that Perryman would deliver the money to Paniagua in exchange for 7 kilograms of cocaine. On October 12, 2007, Paniagua and Perryman were scheduled to meet for the purpose of conducting the aforementioned deal wherein Perryman would provide Paniagua with $140,00 of **HALE's** money in exchange for 7 kilograms of cocaine. While Perryman was on the way to deliver the money to Paniagua and pick up the cocaine, the Dallas Police Department conducted a traffic stop of Perryman, and seized the cash, which actually totaled $111,965.

On October 12, 2007, Paniagua and **HALE** had a telephone conversation during which **HALE** requested that Paniagua supply **HALE** with thirty kilograms of cocaine at a price of between $19,000 and $20,000 per kilogram. **HALE** stated that he had $300,000.00 that he would give to Paniagua as partial payment for the thirty kilograms of cocaine. Paniagua then told **HALE** that he would be coming to the Mobile area in the coming days and would coordinate the drug transaction at that time.

On October 24, 2007, Paniagua made a consentually (sic) recorded telephone call to **HALE** and arranged a meeting between **HALE** and Paniagua that afternoon. Also at the meeting was a DEA Task Force Officer acting in an undercover capacity. At the meeting, final arrangements for the purchase of the thirty kilograms of cocaine were made, and the parties agreed that **HALE** would provide $300,000 the following day as partial payment for the drugs. In addition, **HALE** suggested that future drug purchases involving similar amounts of cocaine could be made on a regular basis. **HALE** told Paniagua and the undercover officer that he would collect the money and would be ready to consummate the deal on the morning of October 25.

On Thursday, October 25, 2007, Paniagua placed a consentually (sic) monitored phone call to **HALE**, and **HALE** agreed to meet to discuss the transaction with Paniagua and the undercover officer. Paniagua and the

undercover officer met **HALE** at a business off of Highway 45 in Eight Mile, Alabama shortly thereafter. At that meeting, **HALE** told Paniagua and the undercover officer that he had $190,000 of the $300,000, and that he still needed to collect $100,000 from **EZELL**, whom he called "Pops." **HALE** said that he would have all the money by 2:00 p.m.

Shortly before 2:00 p.m., Paniagua called **HALE** and they agreed to meet once again at the same business in Eight Mile. The undercover officer and Paniagua met **HALE** at the business. Paniagua met with **HALE**, and **HALE** said that he had collected all of the money, but that he would have to go get it. There was also a discussion that Paniagua could provide 25 of the 30 kilograms, which **HALE** referred to as "my 25 kilos." **HALE** left the business in a Black Chevrolet Avalanche driven by **EZELL**.

**HALE** and **EZELL** returned to the business shortly thereafter driving the same Chevy Avalanche, and **HALE** instructed Paniagua to go around to the back of the business so that **HALE** could show Paniagua the money. Paniagua did as **HALE** instructed, and saw the significant amount of money **HALE** had collected. Paniagua told **HALE** and **EZELL** to proceed to the Pride truck stop at the intersection of Highway 45 and Interstate 65 in order to meet with the supposed driver of the truck with the drugs for **HALE** and **EZELL** to pick up.

En route to the truck stop, **HALE** and **EZELL,** driving the black Avalanche, [were] stopped at a gas station near the Pride truck stop. **HALE** and **EZELL** were placed under arrest, and the money they were carrying was seized. The money seized from **HALE** and **EZELL** totaled $280,315.57. A fully loaded, black, .40 caliber semi-automatic pistol was located in the center console of **EZELL's** vehicle.

At all times **HALE** acted knowingly and intentionally, and intended that the cocaine be distributed to other persons after **SAMUEL EZELL** and **HALE** received it.

Defendant and the United States do not have an agreement as to the quantity of drugs attributable to defendant for sentencing purposes, and each party reserves the right to present relevant evidence to the Court on this issue at sentencing.

(Doc. 37, FACTUAL RESUME, at 1-6)

every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt." (*Id*. at 11-12 (emphasis supplied))

3.  On January 24, 2008, Hale entered a counseled guilty plea to Count One of the Indictment. (Doc. 39; *see also* Doc. 67, Guilty Plea Transcript)

> THE COURT:  Let me get each of you to raise your right hand and take an oath, please.

> (The Defendants were placed under oath.)

> THE COURT:  . . . I need to tell each of you that you are now under oath. If you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement. Do you understand that, Mr. Hale?

> DEFENDANT HALE:  Yes, sir.

> .       .       .

> THE COURT:  . . . Mr. Hale, would you state your true, full name for the record, please, sir.

> DEFENDANT HALE:  Jeremiah Hale.

> THE COURT:  All right. How old are you?

> DEFENDANT HALE:  34.

> THE COURT:  How much education have you completed?

_____

DEFENDANT HALE:       To the 12th grade.

THE COURT:       Mr. Hanley, to the best of your knowledge, is Mr. Hale fully competent to enter a valid plea today?

MR. HANLEY:       Yes, sir.

.       .       .

THE COURT:       All right. Have either of you ever been treated for any mental illness or addiction to narcotic drugs of any kind?  Mr. Hale?

DEFENDANT HALE:       No, sir.

.       .       .

THE COURT:       Are either of you currently under the influence of any drug or medication or alcoholic beverage of any kind? Mr. Hale?

DEFENDANT HALE:       . . . I did in the past.

THE COURT:       But right now, are you under the influence of any drug or medication?

DEFENDANT HALE:       Oh, no, sir.

.       .       .

THE COURT:       Have each of you received a copy of the indictment in this case, had a full opportunity to review it with your attorney, and do you understand the charge contained in the indictment? Mr. Hale?

DEFENDANT HALE:       Yes, sir.

.       .       .

THE COURT:       Is it necessary that I read the indictment to you, Mr. Hale?

DEFENDANT HALE:    No, sir.

.    .    .

THE COURT:    All right. Now, are each of you fully satisfied with the representation that you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charge? Mr. Hale?

DEFENDANT HALE:    Yes, sir.

.    .    .

THE COURT:    Now, I've been furnished a written plea agreement in this case for each of you, and this plea agreement appears to have your signature at the end of the plea agreement and also at the end of the factual resume. Did you, in fact, sign the document[s], Mr. Hale?

DEFENDANT HALE:    Yes, sir.

.    .    .

THE COURT:    All right. By signing this document, you are acknowledging that you've received a copy of it, that you have either read it or discussed it with your attorney or gone over it with your attorney, that you fully understand the terms and conditions of the plea agreement and factual resume, and that you agree with it. Is that true, Mr. Hale?

DEFENDANT HALE:    Yes, sir.

.    .    .

THE COURT:    Now, have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way? Mr. Hale?

DEFENDANT HALE:    No, sir.

.　　.　　.

THE COURT:　　　Now, the penalties that could be imposed if convicted of Count One of the indictment are outlined on page three of the plea agreement.

And for you, Mr. Hale, if convicted of Count One, you could receive a term of imprisonment of 20 years to life, a fine not to exceed $8 million, a supervised release term up to five years, and a mandatory special assessment of $100. It also indicates that restitution may be ordered. Is that true in this case?

MR. COSTELLO:　　Well, only to the extent that the Mandatory Restitution Act applies in all cases, but we don't expect there to be any restitution here.

THE COURT:　　　All right. Mr. Hale, do you understand that those are the penalties that could be imposed?

DEFENDANT HALE:　　　Yes, sir.

.　　.　　.

THE COURT:　　　Are either of you presently on probation, parole, or supervised release as the result of a conviction in any other case? Mr. Hale?

DEFENDANT HALE:　　　No, sir.

.　　.　　.

THE COURT:　　　Any forfeiture to be had in these cases?

MR. COSTELLO:　　Not specifically, Your Honor. I mean, there is a forfeiture count named. The extent of the forfeiture, at least that we know of at this point, is currency that's already been forfeited.

THE COURT:　　　Okay. So, no additional forfeiture of property or

anything like that?

MR. COSTELLO:    Not that we are aware of at this point.

THE COURT:        All right. Mr. Hale and Mr. Ezell, if convicted of the charge in this case, you may lose valuable rights, including the right to vote, the right to hold public office, the right  to serve on a jury, and the right to possess any kind of firearm. Because it's a drug offense, you could lose certain Federal benefits.

Do you understand that, Mr. Hale?

DEFENDANT HALE:        Yes, sir.

.        .        .

THE COURT:        The United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case? Mr. Hale?

DEFENDANT HALE:        Yes, sir.

.        .        .

THE COURT:        The way in which the Sentencing Guidelines apply to your case might be affected by what you say to the Court and to the probation officer. The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States  have had an opportunity to challenge the facts reported by the probation officer.

Do you understand that, Mr. Hale?

DEFENDANT HALE:        Yes, sir.

.        .        .

THE COURT: The sentence imposed might be different from any estimate your attorney or anyone else might have given you. Do you understand that, Mr. Hale?

DEFENDANT HALE: Yes, sir.

.    .    .

THE COURT: After it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the Guidelines.

Do you understand that, Mr. Hale?

DEFENDANT HALE: Yes, sir.

.    .    .

THE COURT: Under some circumstances, you the United States each may have the right to appeal any sentence the judge imposes. For instance, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings not waived by your guilty plea.

You also have the right to waive your right to appeal, and I see by your plea agreements that you are waiving your right to appeal any sentence imposed with the following exceptions: And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel.

Do you understand that, Mr. Hale?

DEFENDANT HALE: Yes, sir.

.    .    .

THE COURT: Parole has been abolished. If you are sentenced to

prison, you will not be released on parole. Do you understand that, Mr. Hale?

DEFENDANT HALE:       Yes, sir.

.       .       .

THE COURT:       If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that, Mr. Hale?

DEFENDANT HALE:       Yes, sir.

.       .       .

THE COURT:       You have a right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to trial by jury. During that trial, you would have the right to the assistance of counsel for your defense and to the appointment of counsel if you could not afford to hire one, the right to see and hear all of the witnesses and to have your attorney cross-examine them, the right to testify yourself or to decline to testify and remain silent, and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense.

At the trial, you would be presumed to be innocent, and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced that the United States has met that burden.

If you are found guilty after a trial, you would then have the right to appeal your conviction to a higher court, and if you could not afford to pay the cost of an appeal, the Government would pay those costs for you.

Do you understand all of that, Mr. Hale?

DEFENDANT HALE:       Yes, sir.

.    .    .

THE COURT:    If you plead guilty, however, and if the Court accepts your plea, there will be no trial; you will be waiving or giving up your right to a trial and all the other rights that I just described.

Do you understand that, Mr. Hale?

DEFENDANT HALE:    Yes, sir.

.    .    .

THE COURT:    Included in your plea agreement is a factual resume, and this factual resume has a statement of the elements of the offense charged in Count One of the indictment, which states a violation of Title 21, United States Code, Section 846.

And the elements of that offense are that two or more individuals in some way or manner came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute cocaine; that you, knowing the unlawful purpose of the plan, willfully joined in it; and that the object of the unlawful plan was to possess with intent to distribute more than five kilograms of cocaine.

Do you understand that those are the elements of the offense to which you are pleading guilty, Mr. Hale?

DEFENDANT HALE:    Yes, sir.

.    .    .

THE COURT:    And do you fully understand that if there was a trial in this case, the United States would be required to present sufficient evidence to prove each of these essential elements beyond a reasonable doubt? Mr. Hale?

DEFENDANT HALE:    Yes, sir.

THE COURT: Also included in your factual resume is a statement of offense conduct. Did you, in fact, commit the acts and do the things that you have admitted to in this statement, Mr. Hale?

MR. HANLEY: Judge, if I could refer your attention to . . . the factual resume . . . page three.

THE COURT: All right.

MR. HANLEY: And this is not going to change anything about the guilty plea whatsoever. The second paragraph is a summary of what Mr. Paniagua told the agents, and in it he refers to some methamphetamine.

. . . [W]e agree that Mr. Paniagua said that. We do not agree that he delivered any methamphetamine to Mr. Hale, and we think that his estimates are a bit high. But certainly, we agree with everything else in that . . . he was receiving cocaine, and the money transfer and everything else is correct, Your Honor. . . .

THE COURT: And I understand that you are reserving the right to argue quantity at the time of the sentencing?

MR. HANLEY: That's right, Your Honor. Yes, sir.

THE COURT: All right. With those comments, Mr. Hale, did you, in fact, commit the acts and do the things that you have admitted to in this statement of offense conduct?

DEFENDANT HALE: Yes, sir.

.     .     .

THE COURT: Then for you, Mr. Hale and Mr. Ezell, I find that the facts and acts to which you have admitted support a violation of the charge contained in Count One of the indictment. How do you now plead to the charge in Count One of the indictment, guilty or not guilty, Mr. Hale?

DEFENDANT HALE: Guilty.

.    .    .

THE COURT:     All right. And Mr. Hanley, are you aware of any
reason the Court should not accept Mr. Hale's guilty plea at this time?

MR. HANLEY:     No, sir.

.    .    .

THE COURT:     Then it is the finding of this Court in the case of
the United States versus Jeremiah Hale and Samuel Ezell that each of you are
fully competent and capable of entering an informed plea, that you are aware
of the nature of the charge and the consequences of your plea, and that your
plea of guilty is a knowing and voluntary plea supported by an independent
basis in fact containing each of the essential elements of the offense. Your plea
is therefore accepted, and you are now adjudged guilty of that offense.

(*Id.* at 2-3, 3, 4, 4-5, 5-6, 6, 6-7, 8, 9, 10, 11, 11-12, 13, 13-14, 15 & 16)

4.     The Presentence Investigation Report was initially prepared by the Probation

Office on April 16, 2008 and distributed to counsel. (*See* Doc. 56, at 1) Although the United

States indicated that it did not have any objections to the report (Doc. 51), counsel for Hale

interposed the following objections to the report:

1.     The Defendant objects to the finding in paragraph thirty-five of
the pre-sentence investigation report that the Defendant was responsible for a
total marijuana equivalent of 60,780 kilograms and a base offense level of
thirty-eight.

2.     The Defendant objects to the finding in paragraph thirty-six of
the pre-sentence investigation report that the Defendant possessed a firearm
and that the offense level should be increased by two levels.

3.     The Defendant objects to the finding in paragraph thirty-eight of
the pre-sentence investigation report that the Defendant was a manager or a

supervisor of a criminal activity and that the offense should be increased by three levels.

(Doc. 47, at 1) The probation officer responded, in the following manner, to the defendant's objections:

[1.]    The base offense level was determined by the information received in the discovery, and the defendant's factual resume. The probation officer stands by the presentence report, as written, and respectfully recommends that the parties be prepared to present their respective positions at the sentencing hearing.

.    .    .

[2.]    As indicated in the discovery, on October 25, 2007, during the arrest of the defendant, for the instant offense, a .40-caliber semi-automatic pistol was found in the center console of **Hale's** vehicle. Shortly thereafter, a search warrant was executed at **Hale's** residence in Eight Mile, Alabama, where numerous firearms were found. Pursuant to U.S.S.G. § 2D1.1, Commentary Application Note 3, "the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." The probation officer stands by the presentence report, as written, and respectfully recommends that the parties be prepared to present their respective positions at the sentencing hearing.

.    .    .

[3.]    According to the statements made by Freddy Paniagua, Samuel Ezell and Andre Gable were **Hale's** "right hand men;" and Antonio Crenshaw was one of **Hale's** street hustlers. Based on the investigation, there were at least five or more participants in the drug conspiracy, and **Hale** was one of the main "players."  The probation officer stands by the presentence report, as written, and respectfully recommends that the parties be prepared to present their respective positions at the sentencing hearing.

(Doc. 56, **ADDENDUM TO THE PRESENTENCE REPORT**, at 1, 1-2 & 2 (internal

citation omitted))

5. Because the parties could not agree on the total offense level, testimony was taken at the July 1, 2008 sentencing hearing. (Doc. 62, Sentencing Hearing Transcript, at 4-33) Freddy Paniagua testified that he worked drug deals with Hale, Ezell, and a guy named Darren over the past five years. (*Id*. at 6, 8 & 10) According to Paniagua, Darren worked for Hale. (*Id.* at 8; *see also id*. at 8-9 (Hale and Ezell put the money together and gave it to Darren to make the transaction)) Paniagua sold the men primarily powder cocaine; the first year he sold them approximately 3 to 5 kilos each month but then that amount increased in at least one subsequent year to 8 to 10 kilos a month. (*Id*. at 10-13) The witness testified that he cooperated with the DEA in setting up a deal with Hale and Ezell in Mobile in which he promised to sell them 30 kilograms of powder cocaine. (*Id.* at 15) Paniagua estimated that he sold Hale and Ezell approximately 200 kilos of powder cocaine over the period of time he was dealing with them. (*Id*. at 18)  Hale's attorney vigorously cross-examined Paniagua (*id*. at 20-33) and, based on the content of Paniagua's responses to that questioning (*see id*.), a sidebar conference was conducted, Paniagua was released to a holding cell (*id*. at 33), and the following occurred:

> THE COURT: Mr. Hanley, are you ready to proceed?
>
> MR. HANLEY:      Yes.
>
> THE COURT:        . . . Mr. Hale, if you will come forward, please. . . . Raise your right hand and take an oath.

24

(Defendant Hale was placed under oath.)

THE COURT:　　　All right. Would you state your name for the record, please, sir.

DEFENDANT HALE:　　　Jeremiah Hale.

THE COURT:　　　All right. Mr. Hale, it's probably obvious that you are here today for a sentencing hearing following entry of a guilty plea on January 24, 2008, to Count One of the indictment charging conspiracy to possess with intent to distribute cocaine. The plea was entered subject to a written plea agreement.

The Presentence Report has been published in this case, and Mr. Hanley, I assume that you've received a copy of that report and had a chance to discuss it with Mr. Hale?

MR. HANLEY:　　　I have, Your Honor.

THE COURT:　　　And Mr. Hale, you understand what's contained in the Presentence Report?

DEFENDANT HALE:　　　Yes, sir.

THE COURT:　　　There were a number of objections filed to the Presentence Report, initially, the objection to the weight of the drugs attributable to Mr. Hale, which we have now spent about an hour taking testimony on. And based on a conference with Counsel, it's my understanding that you've reached an agreement as to the quantity that is attributable to Mr. Hale –

MR. HANLEY:　　　Yes, sir.

THE COURT:　　　–is that correct [] Mr. Costello?

MR. COSTELLO: Yes, Your Honor. The agreement is to approximately between 30 and 50 kilos but not more than 50 kilos of powder cocaine.

25

THE COURT:       All right. And that's based on information that's contained in the Presentence Report regarding a transaction that occurred here in Mobile and also money that was transferred as a result of other transactions, as I understand it?

MR. HANLEY:       It does. It only deals with the incident surrounding his arrest and the two money transactions in Mobile, yes, sir.

THE COURT:       All right. And based on that agreement then, the base offense level is 34. There are also other objections, that being the enhancement for the firearm and an enhancement for Mr. Hale's alleged role in the offense.

Mr. Hanley, you want to be heard on those?

MR. HANLEY:       Judge, yes, sir. I understand that there is an agreement on that, Judge, that the enhancement, the three-point enhancement for his leadership, that motion would be granted. My objection would be granted.

It's also my understanding, Judge, that we have an agreement that there was a gun in the console of the vehicle when Mr. Hale was arrested and that we would agree that my objection to that would be denied.

THE COURT:       Okay. Is that the Government's agreement as well?

MR. COSTELLO:    It is, Your Honor.

THE COURT:       All right. Based on what I see in the Presentence Report as well as the testimony that I heard this morning, I find that the firearm adjustment under 2D1.1 does apply. There's a two-level enhancement. The role in the offense does not apply, and therefore the objection is granted as to the role.

That generates a base offense level of 34. There's a two-level enhancement for the firearm and then a three-level reduction for acceptance of responsibility, generating . . . an adjusted offense level of 33, generating a guideline range of 135 to 168 months. However, the mandatory minimum in

this case applies, and the mandatory minimum in this case is 240 months.

Is that correct, Mr. Hanley?

MR. HANLEY:        Yes, sir.

THE COURT:        And Mr. Costello?

MR. COSTELLO:    That's correct, Your Honor. That's based on the Defendant's prior conviction on January 13th of 1998 for a felony possession of cocaine charge in Mobile County.

THE COURT:        All right. Mr. Hanley, you have anything you want to offer on Mr. Hale's behalf before sentence is imposed?[4]

.        .        .

MR. HANLEY:        Come on over here, Jeremiah. Judge, I would ask that you sentence Jeremiah to the statutory minimum.

THE COURT:        All right. Mr. Hale, you have anything you want to say before sentence is imposed?

DEFENDANT HALE:        I just want to say I'm sorry for what I did, and I apologize to the United States and everybody.

.        .        .

THE COURT:        All right. Mr. Hale, I have considered all the information I have available to me, that contained in the Presentence Report, the comments of Mrs. Hale as well as the letter and the petition that has been signed for you.

I do so because I'm required to under Section 3553(a) of Title 18 to consider your personal history and characteristics, the nature of the offense,

---

[4]        Jeremiah Hale's mother made a statement on his behalf and on the behalf of her grandson, Samuel Ezell. (Tr. at 37-38)

any criminal history that you have in determining a proper sentence, one that is reasonable and fair under the circumstances.

With regard to the nature of the offense, Mr. Costello is right. This is really a major drug case. It's as large as we see in this District. The information contained in the Presentence Report is replete with instances where you were involved in the distribution of large quantities of cocaine in this District.

I don't think there's any question in anybody's mind that that quantity of cocaine has a severe, destructive force on the community. We're talking, you know, up to, at least in the deal that you were caught in, up to 30 kilograms of cocaine and substantial amounts of money being transferred back and forth from Mobile to other places, including Texas and perhaps beyond.

So, the nature of the offense is something I have to consider. However, in your case, because of your prior conviction and because of the substantial quantity of cocaine that you were dealing, the mandatory minimum in your case, that's the sentence that I am obligated to impose and can go no lower then by virtue of the laws of this country, is 240 months.

You have come forward, you have pled guilty, accepted responsibility, and certainly I'll take that into account in fashioning a sentence that is fair and reasonable. Your agreement with the Government is for either a low end of the Guidelines or for the mandatory minimum, I suppose, which in this case is 240 months. That's the sentence that I will impose in this case. It is the minimum sentence that I can impose, but I feel that that sentence certainly is reasonable and accomplishes the sentencing objectives of Section 3553(a).

Accordingly, pursuant to the Sentencing Reform Act of 1984, it's the judgment of this Court that you, Jeremiah Hale, are hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 240 months as to Count One. The Court recommends that you be imprisoned at an institution where a residential, comprehensive, substance abuse treatment program is available.

Upon release from imprisonment, you shall be placed on supervised release for a term of five years as to Count One. Within 72 hours of release

from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released.

While on supervised release, you shall not commit any Federal, state, or local crimes, you shall be prohibited from possessing a firearm or other dangerous device, and shall not possess a controlled substance. In addition, you shall comply with the standard conditions of supervised release as recommended by the Sentencing Commission and on record with this Court.

The Court also orders that you comply with the following special condition of supervised release; that is, that you shall participate in a program of testing and treatment for drug and/or alcohol abuse as directed by the Probation Office.

The Court finds that you do not have the ability to pay a fine; therefore, no fine is imposed.

For the reasons given, the Court finds that the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

It is ordered that you pay a special assessment in the amount of $100 on Count One, which is due immediately.

You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary of if there's some other fundamental defect in the proceedings not waived by your guilty plea or your plea agreement. You have the right to apply for leave to appeal in forma pauperis, and the Clerk of Court will prepare and file notice of appeal upon your request. With few exceptions, any notice of appeal must be filed within 10 days of the date of judgment.

I note that there's a remaining count of the indictment. Does the Government have a motion?

MR. COSTELLO:   Yes. Pursuant to the plea agreement, we move to dismiss Count Two, Your Honor.

THE COURT:     All right. That motion is granted. Count Two of the indictment is hereby dismissed. Anything further from the Government?

MR. COSTELLO:     No, Your Honor. Thank you.

THE COURT:     From Probation?

PROBATION OFFICER JENNIFER CHILDRESS: Your Honor, to the enhanced penalty, the minimum supervised release term is 10 years.

THE COURT:     All right. The order of the Court is amended to reflect a supervised release term of 10 years.

Anything further from Probation?

PROBATION OFFICER JENNIFER CHILDRESS: No, Your Honor.

THE COURT:     Mr. Hanley, anything further?

MR. HANLEY:     No, sir.

THE COURT:     Good luck to you, Mr. Hale. That's all. Thank you.

(*Id.* at 33, 33-36, 38-39 & 39-43; *see also* Doc. 60 (judgment in a criminal case entered on the docket August 4, 2008))[5]

6.     On August 3, 2009, Hale filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 70; *see also* Doc. 71 (memorandum)) Therein, petitioner claimed that his trial attorney provided constitutionally ineffective assistance of counsel, as follows: (1) he failed to object at sentencing and raise on appeal the two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1); (2)

---

[5]     Hale did not appeal his conviction and sentence. (*See* Docket Sheet)

he failed to object at sentencing and raise on appeal that the Court "enhanced" his guideline range from level 32 to level 36 based on the quantity of cocaine alleged in the dismissed Count 2 of the indictment; (3) he failed to object at sentencing to the government's failure to properly notify petitioner of the 851(a)(1) enhancement; and (4) he failed to object at sentencing (and waived the objection and argument on direct appeal) to the court's failure to ask petitioner whether he had previously been convicted of a drug offense and failure to inform petitioner that he could not challenge the prior conviction after sentencing. (Doc. 70, at 4, 5, 7 & 8; *see also* Doc. 71, at 10-44)

7.      The United States filed its motion to dismiss and response in opposition on September 9, 2009. (Doc. 77) Therein, the government argues that Hale's contention–in his memorandum–that his attorney was ineffective in failing to appeal his conviction and sentence has no merit (*id*. at 7-8) and that, otherwise, petitioner is attempting to circumvent his valid sentence appeal waiver by recasting sentencing claims as allegations of ineffective assistance of counsel (*id*. at 8-12). Hale filed a responsive memorandum on October 13, 2009. (Doc. 83)

8.      An evidentiary hearing was conducted in this case on April 13, 2010. Jeremiah Hale testified that immediately after his sentencing hearing was completed on July 1, 2008, and again the following day over the telephone, he informed his retained attorney, Neil Hanley, Esquire, that he wanted to appeal his case. In addition, petitioner's sister, Debra

Hale, and his mother, Jessie Mae Hale, testified that they both spoke to Hanley during the days immediately following Jeremiah's sentencing and informed him that Jeremiah wanted to pursue an appeal.[6] According to Hale, he wanted to appeal his sentence because he had been informed by Hanley before entry of his plea of guilty that he was facing a mandatory minimum sentence of 10 years to life imprisonment and that it was only later, after he changed his plea to guilty, that he learned that because of his prior drug felony that the mandatory minimum sentence was 20 years to life imprisonment. Petitioner testified that had he known the mandatory minimum sentence he was facing was 20 years to life imprisonment, he would have pleaded not guilty and would have insisted on going to trial.[7]

9.      In contrast to the Hales' collective testimony, Hanley testified that Hale never requested that he file notice of appeal nor did any of Hale's family members inform him that petitioner wanted to pursue an appeal. Hanley stated that had any such information been given to him directly by Hale, or relayed to him by Hale's family members, he would have been duty-bound to file notice of appeal, regardless of the fact that he did not believe there

---

[6]      None of these three witnesses testified that Hanley specifically refused to file an appeal. Instead, what these witnesses stated was that Hanley told all of them he would get back in touch with them, or at least touch base with Hale and speak to him about his case, but that Hanley simply "dropped the ball" in this regard.

[7]      Hale testified that even though the plea agreement specifically stated that the maximum penalty he could face as to Count 1 of the indictment was imprisonment for 20 years to life, he thought the modifier "could" meant just that and not that 20 years was the minimum mandatory sentence he was facing.

were any appealable issues that had merit,[8] and would have taken literally a few minutes of his time to electronically file notice of appeal.[9]  According to Hanley,  Hale at all times appreciated the fact that the mandatory minimum sentence he was facing was 20-years to life imprisonment,[10] given his prior drug felony,[11] and that he also knew that the only possible way he could get a sentence of less than the 20-year statutory mandatory-minimum sentence was to cooperate with the government[12] so that it would move for downward departure. Hanley testified that the DEA gave Hale the opportunity to cooperate after entry of his guilty plea; however, instead of providing substantial assistance, Hale lied to the DEA and thereby

---

[8]    Hanley testified that in his 35-year legal career he has never refused to file a notice of appeal for any client intent on appealing his or her conviction and/or sentence, regardless of the merits of the notice. In fact, he has recently in two cases filed notices of appeal and briefs even though he did not believe there were any meritorious issues for appeal. In Hale's case Hanley testified that, had he been asked, he would have filed a notice of appeal and either represented Hale on appeal or asked this Court to appoint another attorney to represent him on appeal.

[9]    Because of his duty in this regard, and the relative ease with which an appeal could have been accomplished, there was no reason for Hanley to refuse to file notice of appeal.

[10]    Hanley negotiated the 20-year deal because had Hale gone to trial he would have faced a much lengthier sentence upon conviction.

[11]    Hanley testified that he never informed Hale, nor would he have ever informed Hale, that the mandatory minimum sentence he was facing, given his prior drug felony, was 10 years to life imprisonment, as opposed to 20 years to life imprisonment, because it has never been his experience for the government not to pursue a § 851 enhancement based on a prior felony drug conviction.

[12]    Hanley testified that the reason Hale wanted to cooperate  was because the mandatory minimum sentence was so high given his prior drug felony, a conviction which both men knew was valid.

thwarted any possibility of receiving a downward departure. Hanley testified that the only conversation he had with Hale after his sentencing revolved around his desire to get back in touch with the DEA and provide them with truthful information.[13]

10.     During the evidentiary hearing, counsel for the petitioner admitted that Hale did not raise in his § 2255 motion (Doc. 70) the claim that he directed Hanley to file an appeal and Hanley refused to appeal his case and, further, that the only reference to this claim made by Hale is contained in one sentence on pages 14 and 15 of his 45-page memorandum in support of his motion (*see* Doc. 71, at 14-15 ("Defense counsel Neil Hanley denied Mr. Hale of his constitutional right to appeal these objections, after Mr. Hale requested counsel to do so.")). Despite this failure, the undersigned scheduled and conducted an evidentiary hearing, at the government's request (*see* Doc. 77, at 6-8), out of an abundance of caution given this Court's duty to liberally construe *pro se* pleadings. Nevertheless, Hale's failure to directly raise this pivotal claim in his § 2255 motion casts into doubt Hale's evidentiary testimony, as well as that of his sister and mother, regarding the purported lengths taken to have Hanley pursue an appeal in this case.

## CONCLUSIONS OF LAW

1.     28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released

_____

[13]     By this time, however, it was too late for Hale to come across with truthful information. In other words, Hale's previous untruthfulness made him unusable to the DEA.

upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.    In this instance, Hale contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[14] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom.*

---

[14]    Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised. *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

*Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[15] The *Strickland*

*v. Washington* standard for evaluating claims of ineffective assistance of counsel was held

applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d

203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[16] In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses

added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d

860 (1996).[17] Of course, in the context of sentencing following entry of a guilty plea the court

---

[15]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[16]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

[17]     "'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted).

simply considers whether petitioner has established, in accordance with *Strickland, supra,* that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 2010 WL 438704 (3rd Cir. 2010).

3.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

4.     Petitioner's primary contention in this case, as previously indicated, is that he instructed/requested his attorney, Neil Hanley, to appeal his case and that Hanley's failure to file an appeal in his case deprived him of constitutionally effective assistance of counsel. To this end, Hale testified during the evidentiary hearing that he told Hanley he wanted to appeal and, as well, petitioner's mother and sister testified they informed Hanley that Hale desired to appeal his case; however, Hanley testified that neither Hale nor any family member on petitioner's behalf informed him the petitioner desired to pursue an appeal. The

conflicting testimony requires the undersigned to make a credibility determination. Given that Hale's testimony for why he desired to pursue an appeal, that is, that he did not know until it was too late to withdraw his plea that he was facing a statutory mandatory minium sentence of 20 years to life imprisonment, is contrary not only to Hanley's evidentiary hearing testimony but, as well, to all other evidence contained in the Court's electronic files,[18] the undersigned finds no basis for petitioner to have instructed Hanley to file an appeal and, therefore, finds that Hale did not instruct/request his attorney to file an appeal. This credibility determination is solidified by petitioner's failure to specifically delineate this ground as a claim in his § 2255 motion, the fact that Hanley had no reason not to pursue an appeal had Hale instructed him to do so given the relative ease with which such an appeal could be accomplished electronically, and the general demeanor of Hanley at the hearing as opposed to the demeanor of Hale and his witnesses. Accordingly, Hanley's representation of Hale in this regard was not deficient. *See, e.g., Smith v. United States*, 522 F.Supp.2d 233, 238 (D. D.C. 2007) ("[T]he Court finds that petitioner did not ask his counsel to file an appeal, and therefore, counsel's representation of defendant was not ineffective."); *cf. Gomez-Diaz v. United States*, 433 F.3d 788, 791-792 (11th Cir. 2005) ("The [Supreme] Court

---

[18]     Petitioner knew from at least his detention hearing on November 1, 2007 that he was facing an enhanced sentence, due to his prior drug felony, of a mandatory minimum of 20 years to life in prison. His knowledge of this fact was thereafter reinforced at the probation office conference on December 18, 2007, prior to his guilty plea proceeding when he and his attorney went over the details of the plea agreement, and during the guilty plea proceeding itself.

[in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)] first reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se. The Court went on to hold that, even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. ***If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case***." (internal citations omitted; emphasis supplied)).

5.     The government contends that petitioner's claims one through four, same actually set forth in his § 2255 motion as opposed to his memorandum in support thereof, are improper attempts to circumvent his sentence appeal waiver by recasting sentencing claims as allegations of ineffective assistance of counsel. The undersigned agrees.

6.     It is clearly established in this circuit that "[a]n appeal waiver is valid if a defendant enters into it knowingly and voluntarily." *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (citation omitted); *see also United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) ("We hold, therefore, that in most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit."), *cert. denied,* 513 U.S. 1051, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994). In this case, Hale pleaded guilty during a change of plea proceeding after being informed of the limited

appeal waiver and acknowledging his understanding of that limited waiver. Specifically, Hale

informed the Court that he understood, as set forth in the plea agreement bearing his

signature, that he had waived all rights to appeal his sentence except that he could appeal if

the punishment imposed was in excess of the statutory maximum, if the punishment imposed

constituted an upward departure from the guideline range, or if he had a claim of ineffective

assistance of counsel. (Doc. 67, Guilty Plea Hearing, at 10; *compare id. with* Doc. 37, PLEA

AGREEMENT, at ¶¶ 20-22) Based upon the foregoing, as well as Hanley's evidentiary

hearing testimony that Hale's case presented no meritorious issues to appeal, the undersigned

holds that Hale's knowing and voluntary limited waiver of his right to appeal his sentence

in this case should be enforced. Because it is clear that Hale's punishment was not in excess

of the statutory maximum nor was his sentence an upward departure from the guideline

range, his numerous (and frivolous)[19] sentencing arguments cannot be challenged in this

collateral petition. *Cf. Bushert, supra,* 997 F.2d at 1350 n.17 (indicating that even broad

waivers, which include a waiver of collateral appeal of the sentence, can be judicially

enforced so long as they are knowing and voluntary). Accordingly, petitioner is precluded

---

[19]     The undersigned would again emphasize that from virtually the inception of his criminal case, that is, since at least November 1, 2007, Hale knew that because of his prior felony drug conviction he was facing a statutory mandatory minimum sentence of 20 years to life imprisonment.  The position he now stakes in his § 2255 motion and memorandum, through the hands of a prison writ writer, is motivated by nothing other than his after-the-fact attempt to blame someone else for his failure to give truthful testimony to the DEA and thereby reap the benefits of a downward-departure motion filed by the government.

from contesting his counsel's effectiveness related to his sentencing. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.) ("While we have not addressed whether a sentence-appeal waiver includes the waiver of the right to challenge the sentence collaterally in the context of a § 2255 petition asserting ineffective assistance of counsel, every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. We are persuaded by the foregoing consistent line of authority from our sister Circuits on this issue, particularly since a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." (internal citations omitted)), *cert denied*, 546 U.S. 902, 126 S.Ct. 246, 163 L.Ed.2d 226 (2005). In other words, Hale cannot now attack in this § 2255 the two-level gun enhancement to his sentence, the § 851(a)(1) enhancement, or the Court's "enhancement" of his guideline range from level 32 to level 36 because of the quantity of cocaine alleged in the dismissed Count 2, based upon the claim that his attorney was ineffective in failing to properly object to those enhancements. These claims of ineffective assistance of counsel are precluded by Hale's valid sentence-appeal waiver.

7.     Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the

undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is being denied, in substantial part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and, in part, on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.'"'"). The sentence-appeal waiver in this case is valid and, therefore, a reasonable jurist could not conclude that this Court is in error for failing to reach the merits of petitioner's sentencing issues, *see Bushert, supra,* or that it is in error in failing to reach Hale's ineffective-assistance-of-counsel claims as they relate to those sentencing issues, *see Williams, supra,* nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to these claims. *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, as it relates to petitioner's assertion of ineffective assistance of counsel, due to his attorney's alleged failure to appeal his case as instructed, reasonable jurists could not debate whether Hale's § 2255 motion to vacate should be resolved in a different manner or that the Sixth Amendment issue presented is adequate to deserve encouragement to proceed further. Accordingly,

petitioner is not entitled to a certificate of appealability.

## <u>CONCLUSION</u>

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 20th day of April, 2010.

　s/WILLIAM E. CASSADY　　　　　
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[20] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[20]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).